UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— x
                                        :
HEATHER ZHAO,                           :       **ECF**
                                        :
                        Plaintiff,      :
                                        :       13 CV 2116 (GBD) (DF)
            - against -                 :
                                        :
DEUTSCHE BANK AG,                       :
                                        :
                        Defendant.      :
                                        :
———————————————————————— x

## DEFENDANT'S OBJECTIONS TO
## MAGISTRATE JUDGE FREEMAN'S JUNE 24, 2014 ORDER

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

I.      STANDARD OF REVIEW ........................................................................................... 4

II.     ARGUMENT ................................................................................................................. 4

     A.     Deutsche Bank Objects To The Order To The Extent It Requires
        Defendant To Produce Privileged Documents Containing Adverse Impact
        Analyses Because It Is Clearly Erroneous And Contrary to Law .......................... 4

     B.     The Order Is Clearly Erroneous And Contrary To Law Because It
        Requires Defendant To Produce Data About The Reduction In Force In
        GIS At A Global Level ........................................................................................... 8

          1.     Plaintiff's Employment And The Reduction In Force ............................... 8

          2.     The Order Compelling Defendant To Produce GIS Global RIF
              Data Is Clearly Erroneous ......................................................................... 9

          3.     The Order Compelling Defendant To Produce GIS Global RIF
              Data Is Contrary To Law .......................................................................... 12

          4.     Defendant's Production To Date Is Sufficient ........................................ 12

          5.     Defendant Objects To The Production Of Unredacted Documents
              Related To The RIF In GIS Globally ........................................................ 13

     C.     Defendant Has Already Produced Documents Sufficient To Show The
        Transactions Upon Which Plaintiff Primarily Worked And Should Not Be
        Ordered To Reproduce Such Documents In A Format That Is More
        Satisfactory To Plaintiff. ...................................................................................... 14

     D.     Defendant Objects To The Order To The Extent It Permits Plaintiff To
        Depose Kevin Lecocq, Pascal Botteron, And Monika Breitbarth ........................ 16

     E.     Defendant Waives Its After-Acquired Evidence Defense To The Extent It
        Is Premised On Plaintiff's Breach Of Deutsche Bank's Confidentiality
        And Intellectual Property Policies And To Some Extent, The Use of
        Technology Policy ................................................................................................ 17

     F.     Defendant Agrees To Electronic Discovery For Pascal Botteron And
        Kevin Lecocq Solely For Documents Pertaining To The Reduction In
        Force ...................................................................................................................... 19

CONCLUSION ..................................................................................................................... 21

KL3 2978891.5

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Apsley v. Boeing Co.*,
No. 05–1368–MLB, 2008 WL 5211001 (D. Kan. Dec. 09, 2008) ............................................6

*Arista Records, LLC v. Lime Grp., LLC*,
No. 06 CV 5936(KMW), 2011 WL 781198 (S.D.N.Y. Mar. 04, 2011)....................................4

*Cronas v. Willis Grp. Holdings, Ltd.*,
No. 06 Civ. 15295, 2008 U.S. Dist. LEXIS 81083 (S.D.N.Y. Oct. 8, 2008) .........................12

*DiMascio v. Gen'l Elec. Co.*,
307 A.D.2d 600, 762 N.Y.S.2d 696 (N.Y. App. Div. 3d Dep't 2003) .....................................6

*Ge Dandong v. Pinnacle Performance Ltd.*,
No. 10 Civ. 8086(LBS), 2012 WL 4793870 (S.D.N.Y. Oct. 09, 2012) ...................................4

*MacNamara v. City of New York*,
249 F.R.D. 70 (S.D.N.Y. 2008) ...............................................................................................4

*Maloney v. Sisters of Charity Hosp.*,
165 F.R.D. 26 (W.D.N.Y. 1995)................................................................................................7

*In re Rivastigmine Patent Litig.*
237 F.R.D. 69 (S.D.N.Y. 2006) ................................................................................................5

*Sundaram v. Brookhaven Nat'l Lab.*,
No. 94-CV-2330, 1996 U.S. Dist. LEXIS 22811 (E.D.N.Y. Mar. 11, 1996),
*aff'd*, No. 94-CV-2330, 1996 U.S. Dist. LEXIS 22810 (E.D.N.Y. Apr. 5,
1996) ........................................................................................................................................12

*Williams v. Sprint/United Mgmt. Co.*,
238 F.R.D. 633 (D. Kan. 2006)................................................................................................5

## Statutes

Fed. R. Civ. P. 72(a) .............................................................................................................1, 4

KL3 2978891.5

Pursuant to Fed. R. Civ. P. 72(a), defendant Deutsche Bank Securities Inc. ("Defendant" or "Deutsche Bank"), incorrectly identified as Deutsche Bank AG, respectfully objects in part to the Order of Magistrate Judge Debra Freeman ("Judge Freeman"), dated June 24, 2014, rendered in response to plaintiff Heather Zhao's ("Plaintiff" or "Zhao") motion to compel discovery dated May 12, 2014.

## PRELIMINARY STATEMENT

This case is a single plaintiff litigation where Plaintiff—an employee of Defendant for only about two years until her termination as part of a reduction in force ("RIF") across Deutsche Bank—claims that she was subjected to discrimination based on her gender and pregnancy and retaliation based on her alleged protected activities and FMLA-protected leave. Despite these narrow facts, Plaintiff has sought, and received, extensive document discovery in this case, both in electronic and hard copy format. Discovery has been underway for more than a year, involving the production of approximately 2,839 pages of hard copy documents and 17,100 electronic documents, as well as 35 hours of audio recordings produced by Plaintiff, which she surreptitiously made during her employment at Deutsche Bank.

Notwithstanding the overabounding production of documents to date, Plaintiff filed a motion to compel additional discovery on May 12, 2014 seeking the production of twelve categories of documents (Docket Nos. 36-37, the "Mot. to Compel"), which Defendant opposed by letter to this Court on May 19, 2014 ("Def.'s Opp'n"). Plaintiff submitted a Reply Brief on May 21, 2013 (Docket No. 40, "Pl.'s Reply.") and this matter was ultimately referred to Judge Freeman. On June 24, 2014, Judge Freeman issued an order granting in part and denying in part the Motion to Compel (Docket No. 44, "the Order"), directing Defendant to produce excessive additional discovery in eleven of the twelve categories sought by Plaintiff.

Although Deutsche Bank vigorously maintains its contention that no additional discovery is warranted, as asserted in Defendant's Opposition to the Motion to Compel, Defendant objects to only four categories of additional discovery with this Court: (1) adverse impact analyses; (2) global RIF data; (3) documents sufficient to show the primary transactions upon which Plaintiff worked; and (4) the depositions of Kevin Lecocq ("Lecocq"), Pascal Botteron ("Botteron"), and Monika Breitbarth ("Breitbarth"). As an initial matter, Defendants should not be compelled to produce adverse impact analyses—statistical calculations evaluated pursuant to legal criteria—created at the request and direction of counsel and in anticipation of litigation. These documents are protected by the attorney-client privilege and work product doctrines. Defendant also objects to producing documents and information regarding the RIF for individuals in Plaintiff's business unit, Global Investment Solutions ("GIS"), who worked outside the United States because RIF decisions were conducted at a regional level. Further, Defendant already produced documents sufficient to show the transactions upon which Plaintiff primarily worked and objects to the Order, which purports to require Defendant to expend significant amounts of its own resources to re-review such documents and re-produce or identify them in a manner that is more appealing to Plaintiff. Finally, Defendant opposes the depositions of Lecocq, Botteron, and Breitbarth because each has limited relevance to this matter and is located in Europe, and Lecocq is no longer employed by Deutsche Bank and Breitbarth is on maternity leave.

Additionally, because Defendant has uncovered no evidence indicating that Plaintiff divulged to third parties (excluding this lawsuit) the conversations she surreptitiously recorded, Defendant waives the portion of its after-acquired evidence defense regarding Plaintiff's violation of the Deutsche Bank Confidentiality and Intellectual Property policies.

Moreover, because Plaintiff's conduct primarily involves her surreptitious tape recording, Defendant waives its after-acquired evidence defense with respect to Plaintiff's violation of Defendant's Use of Technology Policy to the extent it prohibits conduct in excess of the use of recording devices. Deutsche Bank's Confidentiality, Intellectual Property, and Use of Technology Policies cover a wide range of conduct; the prohibition on recording conversations is only a small portion of the conduct proscribed in these policies. It would be extraordinarily burdensome and completely irrelevant to require Defendant to search for and produce documents addressing such a wide range of conduct, which has no relevance to Plaintiff's conduct or Defendants' after-acquired evidence defenses, as refined in these objections. Accordingly, Defendant asks this Court to modify the Order to reflect that it need not produce documents concerning Deutsche Bank employees who violated or were disciplined for violating these policies beyond those documents pertaining to individuals who violated the Use of Technology Policy by tape recording, which it has already produced.

Lastly, as ordered, Defendant will conduct a search of electronic discovery for the additional custodians, Lecocq and Botteron, for emails relevant to their involvement in the RIF. Defendant believes the Order only requires it to apply the RIF-related terms and time period previously agreed upon by Plaintiff and therefore requests that the Court confirm the Order reflects this scope.

For all these reasons Defendant respectfully requests that this Court sustain its objections to the Order compelling discovery and overrule the Order as discussed in these objections.

- 3 -

## I.   STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 72(a) a party may serve and file objections to a Magistrate Judge's order pertaining to a non-dispositive matter, such as a discovery dispute, within fourteen days of receiving the Order. Fed. R. Civ. P. 72(a); *Arista Records, LLC v. Lime Grp., LLC,* No. 06 CV 5936(KMW), 2011 WL 781198, at *2 (S.D.N.Y. Mar. 04, 2011). The district judge assigned to the matter must "consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). An order is "clearly erroneous" if the court is "left with the definite and firm conviction that a mistake has been committed." *MacNamara v. City of New York,* 249 F.R.D. 70, 77 (S.D.N.Y. 2008) (citations omitted). An order is "contrary to law" when it "fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Ge Dandong v. Pinnacle Performance Ltd.,* No. 10 Civ. 8086(LBS), 2012 WL 4793870, at *3 (S.D.N.Y. Oct. 09, 2012) (citations omitted).

## II.   ARGUMENT

### A.   Deutsche Bank Objects To The Order To The Extent It Requires Defendant To Produce Privileged Documents Containing Adverse Impact Analyses Because It Is Clearly Erroneous And Contrary to Law

The Order is clearly erroneous and contrary to law to the extent it requires Defendant to produce documents containing adverse impact analyses (*see* Order at 2-5). It would trample the attorney-client and attorney work product privileges to order the production of clearly privileged adverse impact analyses—statistical calculations, which measure the effect of an employment action, such as a RIF, on a protected class, and which are evaluated by counsel pursuant to established legal standards for the purpose of providing advice about the employment action in question.

Contrary to the Judge Freeman's assertions (*see* Order at 2-5), adverse impact analyses are attorney-client communications and Deutsche Bank properly withheld them on the

basis of this privilege.  The analyses at issue are undoubtedly protected by the privilege as they

were conducted by representatives of the Human Resources Department at the *direction*, and

with the close *supervision*, of Deutsche Bank's internal counsel for the purpose of obtaining

legal advice about the proposed reductions.  *See In re Rivastigmine Patent Litig.* (MDL No.

1661), 237 F.R.D. 69, 80 (S.D.N.Y. 2006) ("Communications among non-attorneys in a

corporation may be privileged if made at the direction of counsel, to gather information to aid

counsel in providing legal services."(internal references omitted))  Indeed, the email cited by

Plaintiff in the Motion to Compel (*see* Mot. to Compel, Ex. O) demonstrates that the Human

Resources Department was conducting adverse impact analyses for the RIF to share with

Deutsche Bank's Legal Department for the very purpose of seeking legal advice.  As shown by

this email, Human Resources, as well as the decision makers from the various business units

involved in the RIF, worked in conjunction with the Legal Department to analyze each and every

potential candidate for termination in the United States, specifically in order to receive an

opinion about the legal risk of the proposed termination decisions.[1]  Moreover, each adverse

impact analysis is marked "Created at the Request of Counsel in Anticipation of Litigation" and

"Privileged and Confidential."

   Moreover, adverse impact analyses are protected by the privilege,

notwithstanding the fact that an attorney did not participate in every communication, where they

are created for the purpose of obtaining legal advice.  *See Williams v. Sprint/United Mgmt. Co.,*

---

[1] Decisions pertaining to the RIF involved multiple steps.  While the initial part of the process involved the Legal Department meeting with Human Resources, and where necessary, the business, to discuss each candidate, the later portion of the process took place exclusively between the Legal and Human Resources Departments.  In this later phase, the Legal Department asked the Human Resources Department to prepare adverse impact analyses because Human Resources has access to the underlying data about each individual employee, to which the Legal Department does not.  E-mail conversation pertaining to the adverse impact analyses, which do not reflect an attorney's participation, are merely instances in which members of the Human Resources Department are communicating with one another to obtain the data in order to populate these analyses to send to the Legal Department so that Legal can provide further analysis and advice.

238 F.R.D. 633, 638-40 (D. Kan. 2006) (affirming the magistrate judge's ruling that adverse impact analyses, irrespective of whether they were circulated only among non-lawyer HR personnel or forwarded on to counsel, were privileged because they were created for the purpose of obtaining legal advice); *Apsley v. Boeing Co.*, No. 05–1368–MLB, 2008 WL 5211001, at *1 (D. Kan. Dec. 09, 2008) (denying motion to compel production of adverse impact analyses listed on a privilege log despite the fact that attorneys did not author or were not part of the communication based on the court's finding that the documents were prepared by non-attorneys in the process of requesting or receiving legal advice); *DiMascio v. Gen'l Elec. Co.*, 307 A.D.2d 600, 601; 762 N.Y.S.2d 696, 698 (N.Y. App. Div. 3d Dep't 2003) (protecting from disclosure, on the basis of the attorney client privilege, defendant's adverse impact analyses where they were prepared solely for the purpose of providing legal advice to management). Accordingly, Judge Freeman's finding that the adverse impact analyses are not protected by the attorney-client privilege because "it seems that no attorney was even a party to 21 communications that apparently relate to these analyses" (*see* Order at 3), is inapposite because they were prepared for the purpose of obtaining legal advice, as discussed above. Critically, Defendant's privilege log (*see* Pl.'s Reply, Ex. NN) clearly reflects at least eleven entries related to these adverse impact analyses in which Brad Toborowsky, Esq., former in-house counsel for Deutsche Bank, was either the author or recipient. (*See* Pl.'s Reply. Ex. NN., entry nos. 4, 9, 10, 13, 15, 16, 18, 20, 26, 29, and 30). These are instances in which Human Resources is sending the adverse impact analyses to counsel after producing the reports at the Legal Department's direction. Any communication not including the Bank's counsel is among Human Resources personnel solely for the purpose of gathering data for counsel as directed by counsel.

KL3 2978891.5

The Order is further contrary to law because the adverse impact analyses are also protected by the attorney work product privilege, as they were clearly being prepared for, and at the direction of, Deutsche Bank's Legal Department in anticipation of potential litigation. *See Maloney v. Sisters of Charity Hosp.*, 165 F.R.D. 26, 30 (W.D.N.Y. 1995) (finding that documents containing statistical and other information pertaining to a proposed reduction in force, prepared by a Human Resources representative at the direction of counsel, were protected by the attorney work product doctrine because defendant had a "reasonable belief . . . at the time the documents were prepared" that "the large scale reduction in force proposed by defendant would be likely to result in litigation on behalf of affected employees," and such materials were prepared "in anticipation of the very type of claims asserted by plaintiff in this litigation."). Moreover, it is common sense that adverse impact analyses are created to allow in-house counsel the opportunity to give legal advice on the potential effects of a reduction in force, including any potential litigation arising from the same.[2]

Furthermore, Defendant has already produced statistical data regarding all of the employees in GIS in the United States at the time of the RIF, including their titles and genders and the extent to which any such employees took maternity or disability leave in the year prior to the RIF, and identification by name of those employees who were terminated in the RIF.[3]  Thus, Plaintiff has the very statistical information that she purports to require from the adverse impact analyses; to violate Defendant's attorney-client and attorney work product privileges on this basis would be highly improper.

---

[2] At the Court's request, Defendant will make available to the Court all documents containing adverse impact analyses for an *in camera review* so that the Court may make a more informed determination as to the appropriateness of the attorney-client privilege or work product designations.

[3] For the reasons discussed below, Defendant objects to providing statistical data for employees who worked in GIS outside the United States at the time of the RIF.

Because the adverse impact analyses are clearly protected by the attorney client and work product privileges, the Court should overrule the Order compelling their production.

**B.    The Order Is Clearly Erroneous And Contrary To Law Because It Requires Defendant To Produce Data About The Reduction In Force In GIS At A Global Level**

The Order is clearly erroneous and contrary to law to the extent that it requires Defendant to produce documents pertaining to the RIF in GIS globally because decisions pertaining to the RIF were made regionally, irrespective of any limited high-level involvement of certain global managers.  Accordingly, Defendant should not be compelled to produce any additional documents in connection with the RIF to the extent it took place in GIS outside the United States.  Consistent with this objection, Defendant also objects to the production of unredacted documents, which were previously redacted to withhold the names of employees in GIS outside the United States terminated in the RIF.

**1.    Plaintiff's Employment And The Reduction In Force**

During her employment Plaintiff worked in the Private Markets group in the larger business unit of GIS in the United States ("GIS US").  Employees in GIS had reporting lines into both regional and global product heads.  In the case of Plaintiff, she reported indirectly to Benjamin Pace ("Pace"), the Head of GIS in the United States, and to Karim Ghannam ("Ghannam"), the Global Head of Private Markets, both of whom were her managers two levels up.  Throughout her employment, she also reported directly to a lower level manager in Private Markets.

From September 2012 through December 2012, while Plaintiff was out on maternity leave, Defendant undertook a significant firm-wide, global reorganization in order to reduce its headcount and costs.  As a result of this reorganization, GIS ceased to exist and the larger business unit in which GIS was located, the Private Wealth Management Division

- 8 -

("PWM"), was merged with another division.  Plaintiff was selected for inclusion in this RIF as a member of GIS US in September 2012, but consistent with Deutsche Bank's practice, she was not notified of the decision until she neared the end of her leave in January 2013.

**2.    The Order Compelling Defendant To Produce GIS Global RIF Data Is Clearly Erroneous**

The documents clearly show that RIF decisions were made regionally and Plaintiff worked exclusively within GIS US.  Consequently, Plaintiff is only entitled to documents and information pertaining to the RIF for GIS US.  The Order is erroneous to the extent that it compels Defendant to produce information about employees in GIS outside the United States who were terminated or at risk for termination in connection with the RIF, documents reflecting the goals of the RIF in GIS globally, and to identify "all individuals involved in the RIF decision-making process" in GIS globally.  (*See* Order at 1-2) (together "GIS Global RIF Data").

In its Motion to Compel, Plaintiff took portions of several emails out of context in an attempt to show that RIF decisions were made on a global, rather than regional, basis and Judge Freeman found a "colorable basis" for this contention.  (*See* Order at 2.)  However, what these emails show—if anything—is only that global players were involved in the RIF (it was, after all, a firm wide reduction in force); they do not show that global players were making global decisions.  What is clear from the emails attached to both Plaintiff's and Defendant's motion papers is that employees in the United States were considered together as a group, wholly exclusive from employees in other regions, *e.g.* the United Kingdom and Germany.

For instance, in an effort to demonstrate that Lecocq, the Global Head of GIS, was a decision maker in the RIF, and that Plaintiff is therefore entitled to GIS Global RIF Data, Plaintiff pointed to Exhibit I to the Motion to Compel.  In that document, however, Lecocq

- 9 -

simply expresses frustration with the delay that his regional subordinates, including Plaintiff's regional head, Pace, have caused in providing additional names for the RIF and states he has selected names only because the regional heads have not done so and invites his subordinates to choose different names by a certain deadline. (*See* Mot. to Compel, Ex. I.) In fact, this email contains a chart—broken down *by region*—showing the number of additional terminations that must occur, listing Pace as needing to provide nine additional names. (*See id.*) Conveniently, Plaintiff also failed to mention the emails that occurred in response to Exhibit I, in which Pace states that he "can substitute other names" for the "9 [names Lecocq] identified in the US" and later, that Pace himself "spent the weekend debating the names" of the employees to be restructured for the U.S. region. (Def.'s Opp'n, Ex. 2.) Moreover, in Exhibit T to the Motion to Compel, which Plaintiff also attempted to use to portray Lecocq as a decision maker, Pace is in fact suggesting Plaintiff's and other specific employee names—all of whom worked in GIS US—for termination to Lecocq, his manager. (Mot. to Compel. Ex. T.) Here too, Plaintiff conveniently fails to include Lecocq's response to Pace's email, in which Lecocq simply stated, "Sounds reasonable. Do you all agree?" (Def.'s Opp'n, Ex. 3.) Furthermore, merely because Pace's termination decisions may have been subject to review by his manager does not suddenly make regional decisions global decisions, nor does it mean that Pace was not in fact the relevant decision maker.

Notably, Plaintiff and Judge Freeman simply ignored documents demonstrating that Pace was in fact the decision maker with respect to Zhao's inclusion in the RIF and that the decision was made solely with regard to the GIS US population. (*See, e.g.,* Def.'s Opp'n, Ex. 2; Ex. 3; Ex. 4 (email dated December 18, 2012 from Pace stating that, "These are the four names we settled on yesterday," including that of Zhao); and Ex. 5 (email dated January 6, 2013 from

Pace including Zhao on a list of "those who are scheduled to be restructured this month in the *Americas*" and that "this third round will result in a 32% total decrease in staffing in legacy *Americas GIS*" (emphasis added)).)

Moreover, and most critically, none of the documents relied upon by Plaintiff or reviewed by Judge Freeman show that Plaintiff was ever assessed for purposes of the RIF against any employee in another region of GIS. Rather, the documents demonstrate that to the extent Plaintiff was assessed against other employees for purposes of the RIF, it was against other employees in the United States. (*See* Mot. to Compel, Exs. I, Q (email from Ghannam dated December 15, 2012 stating that Plaintiff is to be used as a replacement for "the sole PE distribution specialist in the US."); Def.'s Opp'n, Ex. 5 (email from Pace dated January 6, 2013 summarizing employees, including Zhao who are to be restructured this month "in the Americas.")). These regional specific assessments of employees are also seen comparing employees within other regions such as the United Kingdom (*see* Mot. to Compel, Ex. V (email from Ghannam dated December 14, 2012 stating that a UK-based employee should "be replaced by [a certain UK-based employee] or any other business manager/COO in London")) and Germany (*see* Def.'s Opp'n, Ex. 3 (email from Ghannam dated December 15, 2012 discussing how employees to be terminated can only be replaced with other employees from the same region or office, e.g. the "US side," the "German side," etc.). Such documents demonstrate that each region of GIS was treated as a separate unit for purposes of the RIF and that the appropriate decisional unit for discovery purposes in this case is GIS US. Accordingly, this Court should sustain Defendant's objections to producing GIS Global RIF Data.

### 3.    The Order Compelling Defendant To Produce GIS Global RIF Data Is Contrary To Law

The Order compelling Defendant to produce GIS Global RIF Data (*see* Order at 1-2) is also contrary to law. The mere fact that the RIF was conducted firm-wide across many Deutsche Bank offices does not entitle Plaintiff to GIS Global RIF Data. Rather, Plaintiff is simply entitled to discovery concerning the RIF as it affected GIS US because termination decisions in the RIF were made at the regional level, as discussed above. *See Cronas v. Willis Grp. Holdings, Ltd.*, No. 06 Civ. 15295, 2008 U.S. Dist. LEXIS 81083, at *5-6 (S.D.N.Y. Oct. 8, 2008) (denying nationwide discovery concerning employment decisions in a putative class action where the decisions at issue were made locally as "[e]vidence of discriminatory acts taken by different supervisors in different offices against different employees would not tend to prove that plaintiffs had suffered discrimination"); *Sundaram v. Brookhaven Nat'l Lab.*, No. 94-CV-2330, 1996 U.S. Dist. LEXIS 22811, at *5 (E.D.N.Y. Mar. 11, 1996), *aff'd*, No. 94-CV-2330, 1996 U.S. Dist. LEXIS 22810 (E.D.N.Y. Apr. 5, 1996) ("the typical boundary for gathering information about an employer's practices concerning employees other than the plaintiff is the plaintiff's 'employing unit or work unit'"). Accordingly, this Court should overrule the Order to the extent it mandates the production of GIS Global RIF Data.

### 4.    Defendant's Production To Date Is Sufficient

Because termination decisions in connection with the RIF were made by each business unit at the regional level, and because Pace, the head of GIS US, was the primary decision maker with respect to the decision to terminate Plaintiff's employment, GIS US is the decisional unit relevant to Plaintiff's termination, as discussed above. Accordingly, Defendant has produced documentation sufficient to show the number of employees who worked in GIS in the United States before the RIF, their titles and genders, and the extent to which any such

employees took maternity or FMLA leave in the 12 months prior to the RIF, with individual employee names redacted; and the identities, including individual employee names, of the employees in GIS in the United States terminated in connection with the RIF and their titles and their genders, as well as those employees considered for termination in the RIF. Defendant also produced Human Resources files and the files of Plaintiff's managers regarding Zhao and the RIF in which she was terminated, including documents concerning other employees in GIS US terminated in the RIF. In addition, Defendant searched the emails of Pace, Ghannam and Michele Kershenbaum ("Kershenbaum"), the HR business partner covering GIS US, using the broad search terms "Reduction," "Headcount," "Layoff," "Terminat!," "Fire!," and "Let go" unconnected to Plaintiff's name.[4] Defendant's production to date is sufficient and Defendant should not be compelled to produce additional documents pertaining to the RIF.

### 5.    Defendant Objects To The Production Of Unredacted Documents Related To The RIF In GIS Globally

Consistent with this objection, Defendant objects to producing unredacted versions of documents Deutsche Bank redacted on the basis that they contained the names of individuals terminated as part of the RIF in GIS outside the United States. (*See* Order at 7.)

For all the reasons stated above, Defendant requests that the Court sustain its objection and overrule the Order to the extent it compels Deutsche Bank to produce GIS Global RIF Data or unredacted documents that contain the names of employees in GIS outside the United States terminated as part of the RIF.

---

[4] As discussed below, Defendant will conduct similar searches for Lecocq and Botteron.

**C.    Defendant Has Already Produced Documents Sufficient To Show The Transactions Upon Which Plaintiff Primarily Worked And Should Not Be Ordered To Reproduce Such Documents In A Format That Is More Satisfactory To Plaintiff.**

The Order is clearly erroneous to the extent that it requires Defendant to "produce, or to identify by Bates number, documents sufficient to show the 'primary transactions on which Plaintiff worked.'" (*See* Order at 9.) Defendant initially objected to Plaintiff's request for "all documents relating to the business deals and transactions in which Plaintiff was involved" in light of the overbreadth of this request, which would call for the production of an excessive number of deal documents bearing no relation to Plaintiff or her performance. Defendant alternatively agreed to produce a list of the primary transactions on which Plaintiff worked during her employment with Deutsche Bank, to the extent that such a document existed, which it did not.

Notwithstanding this fact, Defendant produced documents from which Plaintiff should be able to deduce the primary transactions upon which she worked, including approximately 16,500 emails from Plaintiff's email box, which, as Plaintiff herself admits (*see* Mot. to Compel at 12-13), include many documents relating to the deals on which she worked.[5] Defendant also searched the email boxes of five of Plaintiff's managers and one of her co-workers using performance-related search terms, such as "Perform!," "Review!," "Expectation!," "Talent w/5 'rating' or 'review,'" and "Goal!" in connection with different iterations of Plaintiff's name and produced any documents pertaining to Plaintiff's performance on the deals on which she worked. (*See* Def.'s Opp'n. Ex. 1) Further, Defendant produced all of Plaintiff's performance evaluations, which, as Plaintiff also admits (Mot. to Compel at 13), discuss her performance on various deals on which she worked. Moreover, Defendant produced the files of

---

[5] These emails represent all of the hits, which resulted from a list of extremely broad search terms, which were heavily negotiated and agreed to by Plaintiff (Def.'s Opp'n Ex. 1).

Zhao's former managers and the relevant Human Resources representatives, including emails maintained on active servers by these individuals, regarding Zhao, which would have included any documents maintained by these individuals regarding her performance. Defendant's exhaustive discovery efforts in this regard clearly satisfy Plaintiff's request for documentation about her efforts on the transactions on which she worked.

Moreover, all of these documents were produced to Plaintiff in an electronically searchable format, in which she is able to run extensive searches for key words and phrases in order to cull down the documents produced to a smaller group more targeted towards the information she seeks. In the absence of a list of Plaintiff's primary transactions, which Deutsche Bank does not have, Plaintiff herself is in the best position to know the deals and transactions upon which she worked. Accordingly, Judge Freeman's directive that Defendant "produce" (in this case reproduce) or "identify by Bates number" documents sufficient to show the transactions upon which Plaintiff worked (*see* Order at 9)—which would require Defendant to re-review the 16,500 documents from Plaintiff's email box, the emails produced from her managers' email boxes as well as their files, Plaintiff's performance reviews, and Human Resources files—is outrageous and clearly erroneous. To hold otherwise would require Defendant to expend vast amounts of its own time and resources to build Plaintiff's case.

Moreover, Plaintiff will soon have the opportunity to depose Ghannam, her senior manager in the Private Markets group, David Koh, her senior co-worker in Private Markets, and Carlos Munoz-Lucas, her direct manager in Private Markets from in or around October 2011 through January 2013, about her work performance on various transactions, providing her with an additional avenue through which to obtain information about the transactions she worked on.

For these reasons, the Court should overrule the Order to the extent it requires Defendant to produce additional documents sufficient to show the transactions on which Plaintiff worked or identify such documents by Bates number.

**D.    Defendant Objects To The Order To The Extent It Permits Plaintiff To Depose Kevin Lecocq, Pascal Botteron, And Monika Breitbarth**

The Order is clearly erroneous to the extent it permits Plaintiff to depose Lecocq, Botteron, or Breitbarth (*id.* at 12-13)—each of whom has very limited relevance to this matter and is located oversees.[6]  As an initial matter, Lecocq is no longer an employee of Deutsche Bank and is located in the United Kingdom.  Moreover, he bears little relation to this case as he was in Zhao's management chain three levels up.  Plaintiff has pointed to no evidence that Lecocq ever worked with her or that he has any direct knowledge of her.  To the extent that he was involved in the RIF, the documents indicate that he provided oversight for the RIF and was not in fact a decision maker.  (*See* Mot. to Compel. Exs. I, T; Def.'s Opp'n, Exs. 2, 3.)  To compel the deposition of a former employee located oversees is unnecessary and would be overly burdensome considering his limited relevance to Plaintiff's claims.

Similarly, Botteron, Head of Global Fund Solutions, is located in Switzerland and never in fact managed Plaintiff.  Botteron became part of Plaintiff's management chain, only while Plaintiff was on maternity leave, as part of the reorganization during which she was terminated.  As Plaintiff never returned to work after the reorganization, Botteron never worked with Plaintiff or managed her in any sense other than title, and there is no evidence that Botteron

---

[6] Defendant does not object to producing *relevant* witnesses for deposition, notwithstanding the fact that it would require burdensome and lengthy travel.  Defendant agreed to produce, and in fact scheduled the deposition of, Ghannam, Plaintiff's manager upon whom she pins the majority of her allegations.  Ghannam is now a very senior person at Deutsche Bank, and is located in Singapore requiring him to travel many hours and rearrange a very busy schedule to attend his deposition.  Defendant simply objects to producing witnesses of little to no relevance when doing so would require excessive travel, disruption of maternity leave, and calling on former employees over whom Defendant no longer has control, as discussed below.

has any direct knowledge of Zhao. In light of his limited relevance to this matter and lack of any direct knowledge of Plaintiff, it is unnecessary and burdensome to compel his deposition.

Finally, Breitbarth, Director, Business Management and Operations team in Private Markets, also has limited relevance to this case. Furthermore, she is located in Germany, and currently on a maternity leave. Ghannam asked Plaintiff if she was interested in pursuing an opportunity on the Business Management and Operations team, reporting to Breitbarth, which Zhao declined to do. Plaintiff claims that in asking her to consider this role, Ghannam attempted to demote her. Plaintiff will have the opportunity to depose Ghannam about the potential Business Management and Operations team role and her allegation that this role was a demotion. Accordingly, it would be unnecessarily burdensome to disrupt Breitbarth's maternity leave in Germany by requiring her deposition.

There is no basis for deposing Lecocq, Botteron, or Breitbarth—employees located oversees with limited relevance to Plaintiff's claims.[7] For these reasons, the Court must overrule the Order to the extent it permits these depositions.

### E.   Defendant Waives Its After-Acquired Evidence Defense To The Extent It Is Premised On Plaintiff's Breach Of Deutsche Bank's Confidentiality And Intellectual Property Policies And To Some Extent, The Use of Technology Policy

Pursuant to the Order, Defendant is compelled to produce "documents concerning employees who, from August 1, 2009 to the present, have violated and/or been disciplined for violating the Bank's internal policies regarding confidentiality, use of technology, and intellectual property." (*See* Order at 10-11.) Judge Freeman compelled this discovery based on her interpretation of the scope of Defendant's after-acquired evidence defense. (*Id.* at 10.)

---

[7] In any event, it would be premature to make a determination regarding Lecocq and Botteron's depositions without Plaintiff first reviewing the documents produced for these custodians pursuant to the Order (discussed below) and if necessary, renewing their application at a later date.

Following Plaintiff's production of 35 hours of tape recordings that she surreptitiously made during her employment with Deutsche Bank, including recordings of confidential business meetings and conversations with her managers and co-workers about deals she was working on, Defendant asserted multiple affirmative defenses related to Plaintiff's misconduct and her potential breaches of Defendant's policies and the law in making these recordings. Specifically, with respect to Plaintiff's potential policy violations, Defendant asserted that Plaintiff may have violated its "Use of Technology Policy," "Confidentiality Policy," and/or "Intellectual Property Policy." All three policies address many different types of employee conduct beyond the tape recording of confidential business information – the specific conduct in which Plaintiff appears to have engaged. (*see* Def.'s Opp'n, Exs. 7, 8, 9). Because tape recording is the primary misconduct at issue, Defendant produced non-privileged documents sufficient to identify the Deutsche Bank employees in the United States who, to the best of Defendant's knowledge, were disciplined for violating Deutsche Bank policy in connection with their use of recording devices, and the nature of the disciplinary action taken, for the period from August 1, 2009 through December 31, 2013.

Because Defendant has discovered no evidence that Plaintiff has divulged to third parties (other than in connection with this lawsuit) the substance of the conversations she recorded, Defendant has reconsidered its after-acquired evidence defense and now waives all portions of the defense pertaining to Deutsche Bank's Confidentiality and Intellectual Property Policies. Further, because Plaintiff's misconduct primarily involved her surreptitious tape recording, Defendant maintains its defense under the Use of Technology Policy only to the extent it prohibits the use of recording devices. (*see e.g.* Def.'s Opp'n Ex. 7, Use of Technology Policy –US ("Except where required for regulatory compliance, Users shall not use any

technology to record, transmit or capture conversations, telephone or conference calls, meetings, pre-recorded materials or any other audio transmission of Deutsche Bank employees, or clients, or that relate to Deutsche Bank.")).  As noted above, Defendant has already produced non-privileged documents sufficient to identify employees who were disciplined for violating this portion of the Use of Technology policy from August 1, 2009 to the present.  Deutsche Bank's Confidentiality, Intellectual Property, and Use of Technology Policies cover a wide range of conduct; the prohibition on recording conversations is only a small portion of the conduct proscribed in these policies.  It would be extraordinarily burdensome and completely irrelevant to require Defendant to search for and produce additional documents addressing a wider range of conduct, which has no relevance to Plaintiff's conduct or Defendants' after-acquired evidence defenses, as refined in these objections.[8]  Accordingly, Defendant asks this Court to modify the Order to the extent it requires Defendant to produce additional documents concerning Deutsche Bank's Confidentiality and Intellectual Property Policies or other portions of the Use of Technology Policy.

### F.     Defendant Agrees To Electronic Discovery For Pascal Botteron And Kevin Lecocq Solely For Documents Pertaining To The Reduction In Force

Finally, consistent with the Order, Defendant will review electronic discovery for additional custodians Lecocq and Botteron for the purpose of producing documents pertaining to the reduction in force, during which Plaintiff was terminated.  (*See* Order at 5-6.)  However, Defendant objects to conducting any electronic discovery beyond the scope outlined by Judge

---

[8] For example, in addition to the use of recording devices the Use of Technology Policy prohibits Users of Deutsche Bank technology from viewing, downloading, or distributing pornographic or obscene material. (Def.'s Opp'n. Ex. 7.)  Similarly, the Confidentiality Policy prescribes employees from, *inter alia*, disclosing an extraordinarily broad range of information, which is not of relevance to Plaintiff's conduct, such as information pertaining to "logos, marks, slogans, software, object code, source, code [and] databases" as well as personal information related to employees or agents of Deutsche Bank including medical and health-related information (Def.'s Opp'n. Ex. 8.)  Finally, the Intellectual Property Policy prohibits a wide range of conduct irrelevant to Plaintiff's claims or Defendants' after-acquired evidence defenses, including the misuse of "patents, . . . trademarks, service marks, trade dress, . . . and inventions." (Def's Opp'n. Ex. 9.)

Freeman[9] and to the production of any documents to the extent that such production conflicts with international data privacy and protection laws.[10]

Judge Freeman ordered additional electronic discovery for Lecocq and Botteron because Lecocq, "appears to have played a significant role in the RIF," and Botteron "appears to have suggested Plaintiff for the RIF." (*See* Order at 5-6.) Notably, she denied Plaintiff's request for additional electronic discovery for proposed custodians Thomas Bowers and Brandon Gardner because Plaintiff "has offered only a thin showing" of their involvement "in the overall RIF decision-making and no showing as to their involvement in the decision to terminate Plaintiff." (*Id.* at 6.) Therefore, conducting searches for RIF-related documents is the proper scope of electronic discovery for Lecocq and Botteron. As discussed above, Lecocq, was three levels above Zhao in her management chain and there is no evidence that he ever worked with her or had direct knowledge of her. Likewise, Botteron only became part of Zhao's management chain during the reorganization while Zhao was on leave. Because Zhao never returned to work after her leave, Botteron never managed Zhao or worked with her. Moreover, both Plaintiff's Motion to Compel and the Order limit the relevance of Lecocq and Botteron to their purported involvement in the RIF. (*See* Mot. to Compel at 9-10; Order at 5-6.) Accordingly, electronic discovery for these additional custodians should be limited to the RIF.

The parties have already negotiated RIF-related search terms and an agreed upon time period for such searches for custodians, Pace, Ghannam, and Kershenbaum. (*See supra* note 3, at 12; Def.'s Opp'n, Ex. 1 at p. 8.) Therefore, Defendant respectfully requests that the Court confirm the electronic discovery for Lecocq and Botteron be limited to these same

---

[9] The Order does not clearly set forth the scope of electronic discovery for Lecocq and Botteron but rather grants "Plaintiff's motion to compel ESI" for Lecocq and Botteron. (*See* Order at 6).
[10] Lecocq was located in London and Botteron was located in Switzerland. Accordingly, all productions must comply with the data protection and privacy laws of the United Kingdom and Switzerland.

searches and overrule the Order to the extent it compels discovery beyond these search terms or to the extent it requires productions that conflict with international data protection and privacy laws.

## CONCLUSION

For the foregoing reasons, together with the reasons stated in Defendant's Opposition to the Motion to Compel, Defendant respectfully requests that this Court sustain its objections to the Order compelling discovery and overrule the Order as discussed in these objections.

Dated: New York, New York
      July 8, 2014

                KRAMER LEVIN NAFTALIS & FRANKEL LLP

                By: /s/ Kevin B. Leblang
                    Kevin B. Leblang
                    kleblang@kramerlevin.com
                    Timothea G.P. Letson
                    tletson@kramerlevin.com
                    Samantha M. Kagan
                    skagan@kramerlevin.com
                1177 Avenue of the Americas
                New York, New York 10036
                (212) 715-9100

                *Attorneys for Defendant*
                Deutsche Bank AG

KL3 2978891.5